LAW OFFICES

# LAZZARO LAW FIRM, P.C.

360 COURT STREET
SUITE 3
BROOKLYN, NEW YORK 11231

TELEPHONE:  (718)  488-1900
TELECOPIER:  (718)  488-1927
EMAIL: LAZZAROLAW@AOL.COM

LANCE LAZZARO

RANDALL LAZZARO *

JAMES KILDUFF *
JAMES KIRSHNER
ROGER GREENBERG

* ADMITTED IN NY & NJ

June 4, 2019

**BY ECF**

Honorable Cathy Seibel
United States District Court Judge
Southern District of New York
The Honorable Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Re:   **United States v. John Castelucci**
      **Docket No.: 0208 7: S3 17 CR 89-08**

Dear Judge Seibel:

      Please be advised that I am writing this letter on behalf of John Castelucci, who is scheduled to be sentenced before your Honor on June 11, 2019 at 2:30 p.m.  As the Court is aware, Mr. Castelucci pleaded guilty to Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d).  This plea was entered pursuant to a plea agreement in which Mr. Castelucci's offense level should be no greater than 17, with a criminal history category of III.  While the Presentence Investigation Report (hereinafter "PSR") suggests that Mr. Castelucci should have an offense level of 20, the report also acknowledges that his plea agreement stipulated a total offense level of 17, see PSR at 6, ¶ 14; and accordingly, Mr. Castelucci's sentencing guideline range should be 30 to 37 months of imprisonment.

      The PSR's offense level of 20 is based upon its inaccurate offense level computation, caused by the erroneous application of grouping alleged offenses pursuant to USSG § 3D1.4.  See PSR at 12-14.  As a result, the discrepancy between the plea agreement and the PSR is due to the PSR's assessment of a three point enhancement based upon the misconception that there was more than one underlying offense in connection with Mr. Castelucci's acknowledgment of his participation in the racketeering conspiracy.  Pursuant to Mr. Castelucci's plea agreement and his plea allocution, there is only one underlying extortionate offense in furtherance of his participation in the racketeering conspiracy.

According to USSG § 2E1.1, the grouping used by the PSR is only appropriate "[w]here there is more than one underlying offense." See USSG 2E1.1, application note 1. Therefore, since there is just one underlying offense in Mr. Castelucci's plea, the PSR incorrectly grouped multiple offenses in calculating its offense level of 20, and the appropriate offense level is 17, as stipulated in the plea agreement. If the Court seeks to enhance Mr. Castelucci's sentence based upon an alleged extortionate act for which Mr. Castelucci has not acknowledged as part of his guilty plea, I will request a *Fatico* hearing to address such an issue.

In determining an appropriate sentence under 18 USC § 3553(a), and specifically in considering "the nature and circumstances of the offense," it is important to point out the fact that Mr. Castelucci's extortionate act as part of his attempt to collect a debt did not involve a weapon, an act of violence, or even an overt threat of violence. Mr. Castelucci's extortionate act involved making efforts to get a debt paid from an old marijuana transaction. The government's cooperating witness, Robert Spinelli, allegedly stole marijuana from another drug dealer. Mr. Spinelli claimed that Mr. Castelucci attempted to have Mr. Spinelli pay back this debt. Given the nature and non-violent circumstances of Mr. Castelucci's extortionate conduct in furtherance of the underlying offense, Mr. Castelucci's sentence warrants a sentence outside of the guideline range.

You can also get a sense of Mr. Castelucci's character in reading the character letters submitted on his behalf. The letters discuss the love and support that he has shown his granddaughters. Since his granddaughter, Vincenza Silva's father was absent, Mr. Castelucci helped to fill that void. Vincenza describes the emotional, physical, and financial support that she has received from Mr. Castelucci throughout her life. As a father figure, he has shown his granddaughter significant love and support that Vincenza will sincerely miss if Mr. Castelucci is incarcerated. He pushes her to achieve good grades and supports her dancing and cheerleading.

The PSR also talks about the steps that Mr. Castelucci took to essentially "adopt" a neighborhood kid, Michael Martinez, who Mr. Castelucci met when the boy was 8 years old. See PSR at 20, ¶ 100. He decided to care and support this neighborhood boy because the boy's mother was addicted to drugs. Mr. Castelucci's love and support over the years helped to raise this boy and shape him into a mature adult who today works in construction. In fact, the bond that Mr. Castelucci formed with Michael Martinez was so great that Michael's daughter, Alexa Martinez, even calls Mr. Castelucci her grandfather (despite having no biological connection). Just like Vincenza, Alexa's letter describes how Mr. Castelucci filled her fatherless void. Alexa calls Mr. Castelucci "an honorable individual, a fantastic grandfather, and a good human being," while emphasizing the critical emotional and financial support that she has received from Mr. Castelucci.

In understanding Mr. Castelucci and who he is today, it is important to be aware of a tragedy which occurred in his life not too long ago. In November of 2016, Mr. Castelucci suddenly lost his son, which is something that he has still not completely recovered from and has dramatically changed his look on life. See PSR at 20, ¶ 99. His son passed away after not receiving necessary medical attention in a timely manner while he was incarcerated on Riker's Island for a minor offense. Mr. Castelucci's son's death was exceptionally painful because, after his son was arrested for a fairly

minor offense, Mr. Castelucci could have bailed his son out of jail, but instead, decided to leave him in jail in an effort to teach him a lesson. Tragically, before Mr. Castelucci could bail him out, his son died. As a result, Mr. Castelucci has never forgiven himself for choosing to leave his son in jail. The devastating loss of his son and the decision that he made has forever changed Mr. Castelucci. It has caused grief that he will take to his grave.

Considering the issues discussed above, including the nature and non-violent circumstances of the offense and Mr. Castelucci's good character, I respectfully request that your Honor sentence Mr. Castelucci below the guideline sentencing range and impose a sentence of one year and one day in jail.

Please also give Mr. Castelucci a self-surrender date after sentencing to allow him to address a recent medical issue before being incarcerated. Mr. Castelucci is currently being treated for a recent TIA (transient ischemic attack), something very similar to a stroke. A letter from his doctor is attached hereto. Mr. Castelucci has follow-up doctor's appointments scheduled for June 14, 21, and July 8 (which include an EEG and cognitive tests). Since a self surrender was discussed with the government as part of our plea negotiations, I understand that the government will not oppose my request for a self-surrender date following Mr. Castelucci's sentencing.

Very Truly Yours,

LAZZARO LAW FIRM, P.C.

BY: _____/s/_____
        LANCE LAZZARO

cc.:    AUSA Celia Cohen
        via e-mail: celia.cohen@usdoj.gov

        AUSA Scott Hartman
        via e-mail: scott.hartman@usdoj.gov

        AUSA Jacqueline Kelly
        via e-mail: jacqueline.kelly@usdoj.gov

        AUSA Hagan Scotten
        via e-mail: hagan.scotten@usdoj.gov

        Probation Officer Emily P. Frankelis
        via e-mail: emily_frankelis@nysp.uscourts.gov